UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:05CR161 HEA |
| ) | |
| DEANDRE THOMPSON, ) | |
| ) | |
| Defendant. ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on the Report and Recommendation of United States Magistrate Judge Audrey G. Fleissig, [doc. # 36], pursuant to 28 U.S.C. § 636(b). Defendant has filed Objections to the Report and Recommendation of Judge Fleissig, which recommended that defendant's Motion to Suppress Evidence and Statements, [doc. # 17], be denied. Defendant objects to "each and every adverse ruling, decision, finding and order contained in the Report and Recommendation," arguing that the rulings, decisions, findings and orders contained therein are against the weight of the evidence adduced at the motion hearings thereon, and are contrary to existing law."

When a party objects to the magistrate judge's report and recommendation, the Court must conduct a *de novo* review of the portions of the report, findings, or

recommendations to which the party objected. See *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir.2003) (citing 28 U.S.C. § 636(b)(1)). This includes a *de novo* review of the magistrate's findings of fact, including any credibility determinations. *Id.* The court has reviewed the entire record, including listening to the audio recordings of the hearings held on September 8, 2005 and October 28, 2005, and reading the transcript of the recording of the July 30, 2003 preliminary examination hearing in Case No. 4:03MJ1141 TIA.

## Facts

At the hearing on September 8, 2005, testimony of Officer Mark McMurray, a police officer with the City of St. Louis Metropolitan Police Department was presented. McMurray has been employed as a police officer with St. Louis for almost 12 years. McMurray's testimony established the following:

On July 25, 2003, the St. Ann Missouri police were informed that the Trail Creek Trade Company, a gun shop, was burglarized. Personnel from Trail Creek informed the police that several dozen firearms, including handguns and rifles, were stolen. The owners were unable, at that time, to determine exactly which firearms were taken.

A confidential informant, who was known to McMurray and had provided information to him in the past, provided information to Detective Day Laterlie, a

detective with the St. Ann Police Department,[1] that an individual known to the CI as "Dee," and others had used a stolen minivan in connection with the burglary. The CI provided description of the minivan and provided the license plate of the van. The CI also informed Laterlie where the van could be found in the area of Kossuth and Camillia in the City of St. Louis.

Laterlie contacted officers from the City for assistance. Approximately eight officers observed a minivan that matched the description given at the given location. After a brief interruption, surveillance was continued at approximately 1:00 p.m. One of the officers ran the Vehicle Identification Number of the van and confirmed that it had been reported stolen and that the licence plates on the van were also stolen.

Two women passed by the surveilling officers and asked it there was a problem with the minivan. The women told the officers that the van was "Dee's" and that Dee lived around the corner. They pointed out the house where they said he lived. Laterlie, McMurray and one or two other officers went to the house identified as 4493 Kossuth. The other officers remained on the street. The officers were wearing vests, jackets, or other items that identified them as police. The front door of the residence was open, the screen door was closed. Upon approaching the

---

[1] The CI was also known to Laterlie, and had provided reliable information in the past.

front door, Charles Miller[2] came to the front door and spoke with Laterlie. Miller said the house was his sister's but that she was ill and he was looking after it. Miller allowed the officers into the house. Laterlie asked Miller if he knew someone named "Dee." Miller said that Dee was his nephew and that he lived at the residence. Miller said that Dee was home and indicated that he was in the back bedroom. Miller allowed the officers to proceed to the back bedroom. According to McMurray, Miller did not appear to be under the influence of drugs or alcohol and appeared to understand what was being said; he gave clear responses and his manner was cooperative.

The officers opened the partially closed door to the bedroom. Defendant and a woman were present in the bedroom. Both were naked on a mattress or pad that was on the floor. Three officers entered the bedroom. They asked defendant to lay on the floor. Defendant complied with this request. Laterlie asked defendant his name and he responded, "Dee." He identified himself as Deandre Thompson when asked for his full name. Laterlie also asked defendant where his clothes were. He pointed to pants and other clothing located on the floor to the side of the mattress. The officers saw several tools on the floor near defendant's clothes, including a bolt cutter, crowbar, hammer, and flashlight, which, based on their experience, the

---

[2] Mr. Miller has since passed away.

officers associated with burglary tools. Laterlie saw a firearm that had been under the pants when he went to retrieve the clothing.

Both defendant and the woman were placed in handcuffs. The firearm and the tools were seized. The firearm was later identified as one of the items stolen from the burglary at the gun shop. Defendant was advised of his *Miranda* rights by Laterlie. Defendant stated that he understood these rights. Subsequent to the reading of the *Miranda* rights, defendant made a statement regarding the firearm and stated that the pants were not his. The officers also seized other items from the bedroom, including a gun catalogue, some rubber gloves, a belt, an ignition key to the minivan, an address book from defendant's pants, and defendant's wallet and Missouri State Id. The officers also seized several pairs of defendant's shoes because scuff marks were found on the walls at the gun shop. The officers found a gun tag that contained handwritten information associating it with the Trail Creek store inside defendant's wallet. When asked about the tag, officers were told by defendant that it didn't matter because he was going to "take the case."

The officers obtained a signed "Consent to Search" from Miller after having arrested defendant. The form stated that Miller understood that he had the right to refuse to consent and that no promises, threats, force or physical or mental coercion of any kind had been used against him to obtain the consent.

On October 28, 2005, defendant presented the testimony of Ebone Smiley, defendant's eleven year old sister. At the time of the events, Smiley was eight years old. She testified that she was living at the residence and that during the course of the events, she was with her mother and grandmother at a health clinic. They were there several hours. Although Smiley testified that her mother and grandmother were in the Courtroom during her testimony, neither woman was called to testify. Smiley further testified that neither defendant nor Miller resided at the residence at the time of these events. When questioned about the events, Smiley testified that when she left the house, it was clean and straighten, but when she returned, there were clothes all around, the bedroom door was knocked down and there was a footprint on the back door. She also said that she overheard a conversation between her mother, her mother's friend, "Mike" and Miller, in which Miller said that her cousin Robert was leaving when the police rushed into the house.

Having listened to both hearings, and based on the record before the Court, considering the witnesses' ability to observe the events, and the age of Ms. Smiley at the time of the events, the Court finds that Officer McMurray's testimony is more credible than that of Ms. Smiley to the extent that the testimony from the witnesses conflicts.

## **Discussion**

Defendant is charged in a two count indictment as a felon in possession of a stolen firearm, in violation of 18 U.S.C. §§ 922(g)(1) and (j). Defendant's Motion to Suppress Evidence and Statements argues that the officers apprehended defendant without probable cause, and that the search of the room violated defendant's Fourth Amendment Rights, citing *Terry v. Ohio*, 392 U.S. 1 (1968) and *United States v. Wong Sun*, 371 U.S. 471. With respect to statements made by defendant, he argues that the statement was made in violation of his Fifth Amendment rights.

Judge Fleissig's Report and Recommendation contains a very thorough analysis of the applicable law with regard to the events herein as they relate to that law.

**<u>Admissibility of Grand Jury Testimony of Charles Miller</u>**

The admission of the Grand Jury Testimony of Charles Miller is appropriate. Hearsay evidence is admissible at a suppression hearing, see *United States v. Raddatz*, 447 U.S. 667, 679 (1980) ("At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence may not be admissible at trial."); Fed.R.Evid. 104(a), 1101(d)(1).

Furthermore, defendant waived any objection to the admission of this testimony because of his reliance on it in arguing that he lived at the residence at the

time of the search. This Court fully agrees with Judge Fleissig that defendant cannot submit this testimony to establish that his primary residence was the Kossuth house, and then argue that it should not be considered on this issue of whether consent was provided.

**<u>Consent to Search</u>**

Mr. Miller's consent to search the residence was valid. An individual's voluntary consent allows a warrantless search and the evidence obtained from that search may be admitted at trial. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Voluntariness is a fact question to be determined from the totality of the circumstances. *Id.*, at 226-27. Officer McMurray's testimony establishes that Mr. Miller allowed the officers into the residence. It was in the middle of the day, and he appeared to understand what was being requested. He did not appear to be under the influence of drugs or alcohol at the time, nor did he object at any time to any of the officers' actions. He stated that he was taking care of his sister's house while she was ill, and thus had apparent, if not actual authority to consent. Mr. Miller signed the Consent form which stated that he understood what was being asked of him and that he could refuse. The form that Mr. Miller signed also stated that he was made no promises, threats , force or physical or mental coercion of any kind whatsoever. The consent to the search was valid and defendant's objections that

there was no consent, and that the officers entered forcibly are overruled. See *United States v. Matock*, 415 U.S. 164 (1964); *United States v. Chaidez*, 906 F.2d 377, 381 (8th Cir. 1990).

**<u>Defendant's Arrest and Seizure of Evidence</u>**

Defendant argues that he was apprehended without probable cause under *Terry*. In accordance with *Terry*, police officers may stop an individual briefly for investigative purposes when they have a reasonable belief that criminal activity "may be afoot." The officers had been advised by the CI that Dee had stolen a minivan in connection with the robbery. They were also informed where the van could be found. Bystanders identified the van as belonging to Dee and that he resided in the residence in which defendant was later found. Based on the facts surrounding the entry into the residence, the officers had a reasonable belief that criminal activity was afoot.

Having been allowed into the house by Mr. Miller, the officers were also allowed to proceed to the back bedroom, where Mr. Miller indicated Dee could be found. The officers had probable cause to arrest defendant once they entered the bedroom. In plain sight in the bedroom were possible burglary tools. Taken together with the information previously obtained in the course of events, the officers had probable cause to arrest defendant. See *United States v. Oropesa*, 316

F.3d 762, 768 (8th Cir. 2003); *United States v. Powell*, 39 F.3d 894, 895-96 (8th Cir. 1994).

Having found the burglary tools and pants in plain view, the items were properly seized. *Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971); United States v. Janis*, 387 F.3d 682, 688 (8th Cir. 2004). The firearm's plain view nature was incidental to the officers handing defendant his pants so that he could get dressed. This conduct was proper and the seizure of the firearm as a result was proper. *United States v. Parker*, 412 F.3d 1000 (8th Cir. 2005).

**Defendant's Statements**

The statements defendant made prior to the reading of his *Miranda* rights are not subject to suppression. Those statements which the police should know are reasonably likely to elicit an incriminating response are subject to *Miranda* protection; those not reasonably likely to elicit such responses are not. *Rhode Island v. Innis*, 466 U.S. 291, 300-01 (1980). The officers' questions were not reasonably likely to elicit incriminating responses and therefore, defendant's responses will not be suppressed.

The statements defendant made after the reading of his *Miranda* rights are not subject to suppression because they were made after defendant stated that he understood those rights. There was no coercion, nor was there any indication that

he was under the influence of drugs or alcohol.  There were no threats or promises made to defendant at that time.  Defendant voluntarily waived his right and his statements were voluntary and intelligent.

### **Conclusion**

The Court has conducted a *de novo* review Judge Fleissig's Report and Recommendation.  Based on the review of the entire record the Court, adopts Judge Fleissig's Report and Recommendation.  Defendant's objections to the Report and Recommendation are overruled.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's Motion to Suppress Evidence and Statements, [Doc. No. 17] is denied.

Dated this 5th day of December, 2005.

_____
   HENRY EDWARD AUTREY
   UNITED STATES DISTRICT JUDGE